# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:23-CV-00090-CRS-HBB

**RACHEL G.**[1]                                                                                             **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY, COMMISSIONER**
**SOCIAL SECURITY**[2]                                                                       **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the Complaint (DN 1) of Rachel G. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Plaintiff has filed a motion for summary judgment with a supporting memorandum and Fact and Law Summary (DN 11). In response, Defendant has filed a Fact and Law Summary (DN 12). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

Pursuant to General Order No. 2019-11 and 28 U.S.C. § 636(b)(1)(B), this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. By Order entered September 7, 2023 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

On September 13, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 19, 168-74). Plaintiff alleged that she became disabled on August 12, 2021, as a result of mental problems, memory issues, anxiety, bipolar, depression, schizophrenia, panic attacks, and high blood pressure (Tr. 19, 64, 71, 188). The application was denied initially on December 16, 2021, and upon reconsideration on June 10, 2022 (Tr. 19, 63, 79). On July 22, 2022, Plaintiff filed a written request for hearing (Tr. 19, 100, 101-02).

On November 22, 2022, Administrative Law Judge Karen R. Jackson ("ALJ") conducted a telephone hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 19, 36). Plaintiff and her counsel, Stacey Hardin-Hibbard, participated by telephone (Id.). Elizabeth Allen, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated January 17, 2023, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 19-28).[3] At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 12, 2021, the alleged onset date (Tr. 21). At the second step, the ALJ determined that Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder/generalized anxiety disorder; social phobia; and disruptive mood dysregulation disorder (Id.). The ALJ also determined that Plaintiff's hearing loss, hypertension, and coccyx fracture are "non-severe" impairments within the meaning of the regulations (Tr. 21-22). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 22).

---

3 The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026 (Tr. 21).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: could understand and remember simple instructions; use judgment to make simple work-related decisions; occasional interactions with supervisors and/or coworkers; occasional interactions with the public; could carry out simple instructions; cannot perform work requiring a specific production rate or work that requires hourly quotas; and could deal with occasional changes in a routine work setting (Tr. 23). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 26).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 26-27). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 12, 2021, through the date of the decision (Tr. 27).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr.162-64, 165-66). The Appeals Council denied Plaintiff's request for review (Tr.5-7).

CONCLUSIONS OF LAW

A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

### B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits. 42 U.S.C. § 401 *et seq.* (Title II Disability Insurance Benefits). The term "disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general,"

4

20 C.F.R. § 404.1520(a).  In summary, the evaluation proceeds as follows:

    1)      Is the claimant engaged in substantial gainful activity?

    2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

    3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)      Does the claimant have the RFC to return to his or her past relevant work?

    5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).  Here, the ALJ denied Plaintiff's claim at the fifth step.

### C. Plaintiff's Challenge to Finding No. 5

Plaintiff challenges the ALJ's mental RFC determination by arguing the ALJ's rejection of opinion evidence from the treating therapist, the treating primary care provider, and the consultative psychological evaluator is not supported by substantial evidence and does not comport with 20 C.F.R. § 404.1520c (DN 11-1 PageID # 648-49, 661-62). Plaintiff asserts that these "rejected medical opinions were all consistent with each other and supported by the medical evidence showing ongoing, severe anxiety, depression and panic attacks despite doing well on medication and not having any additional episodes of psychosis" (Id. at 649). Plaintiff indicates that the ALJ instead relied on the medical opinions of the non-examining state agency physicians which suggested a moderate level of impairment (Id. at 649, 661).

In response, Defendant explains why the ALJ's findings concerning the persuasiveness of the opinions of the treating therapist, the treating primary care provider, and the consultative psychological evaluator are supported by substantial evidence and comport with applicable law (DN 12 PageID # 679-90). Further, Defendant argues that the ALJ properly found the opinions of the state agency psychological consultants to be more persuasive (Id.).

The residual functional capacity determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the residual functional capacity determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 19, 168-74). *See* 20 C.F.R. § 404.1520c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a

---

4 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).

treating medical source. 20 C.F.R. § 404.1520c(a).[5] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

The undersigned will discuss the relevant portions of the ALJ's decision and respond to Plaintiff's challenge. At step two in the sequential evaluation process, the ALJ discussed the "paragraph B" criteria for listings 12.04 and 12.06 and explained why the medical evidence in the record demonstrated that Plaintiff had a mild limitation on her ability to understand, remember, or apply information; a moderate limitation on her ability to interact with others; a moderate limitation on her ability to concentrate, persist, or maintain pace; and a moderate limitation on her ability to adapt or manage herself (Tr. 22-23) (citing Tr. 281-96, 368-406, 414-64, 465-501,

---

[5] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).
[6] In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

7

520-25, 526-50, 551-62, 566-70, 571-88, 589-98, 599-625).[7] The ALJ also indicated why the evidence in the record failed to establish the presence of the "paragraph C" criteria (Id. at PageID # 23).

In the context of assessing Plaintiff's RFC, the ALJ provided a comprehensive summary of Plaintiff's testimony regarding her hospitalization due to signs of psychosis and her condition following discharge from the hospital which included experiencing significant levels of anxiety, debilitating panic attacks, and difficulty concentrating (Tr. 24). After careful consideration of the evidence, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms caused by her medically determinable impairment are not entirely consistent with the medical evidence and other evidence in the record for the reasons provided in the decision (Id.). The ALJ then commented:

> The undersigned finds that the claimant's activities of daily living and the record itself were not consistent with the claimant's

---

[7] The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "4. *Adapt or manage oneself (paragraph B4)*". 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4. These four areas of mental functioning are evaluated on the following five-point rating scale:

> a. *No limitation (or none)*. You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

> b. *Mild limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

> c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

> d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

> e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e. To satisfy the paragraph "B" criteria for Listings 12.04 and 12.06 a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2, Listing 12.04 Depressive, bipolar and related disorders, and Listing 12.06 Anxiety and obsessive-compulsive disorders.

allegations of debilitating impairments. Despite her allegations, the claimant acknowledged that she cares for her chickens, and drives herself sometimes. These activities undermine the claimant's allegations because if her impairments were as severe as alleged, she would not likely have been capable of engaging in such. Furthermore, as mentioned previously, the evidence demonstrates that the prescribed medications largely controlled the claimant's symptoms. ([Tr. 465-501,502-19, 520-25, 571-88, 599-625]). This undermines the claimant's allegations because if her impairments were as severe as alleged, she would have likely required additional mental health treatment. Overall, these activities and observations support the conclusion that the claimant is capable of performing more work-related activities than she alleged.

The objective medical evidence also supports the conclusion that the claimant is not disabled, and more specifically the residual functional capacity set forth above. Specifically, the evidence demonstrates that in August of 2021, the claimant was hospitalized secondary to acute psychosis, with reports of erratic behavior, hallucinations and sleep disturbance. She was actively responding to internal stimuli, with disorganized thought process and appeared restless and agitated. A urine drug screening was positive for THC, and an outside test revealed positive results for methamphetamine. However, the claimant showed marked improvement in her mentation, but, remained anxious. Upon discharge, the claimant presented as calm, with a cooperative mood and blunted affect. She denied suicidal or homicidal ideations and exhibited no signs of physical distress, with her thought content continuing to be clear as the day progressed. ([Tr. 314-67]). Subsequently, the claimant was noted to be doing much better since discharge but complained of still feeling anxious and in a panic about going out in public, with depression at times. ([Tr. 368-406]). Similarly, during an October 2021 consultative examination, the claimant's attention seemed distractible, noting that her anxiety seemed to interfere with her concentration. However, she admitted at that time, that recreationally, she watches television, attends church and uses social media. She also indicated that she sees multiple family members daily and interacts with friends once or twice a week. ([Tr. 407-13]). As of December of 2021, the claimant acknowledged that her symptoms were better, as she was using coping skills, but reported that she continued to experience panic attacks and was isolating when becoming overwhelmed. ([Tr. 414-64]).

> As of January of 2022, the claimant reported that she was doing "okay." ([Tr. 414-64]).  Likewise, during many of these follow-up examinations, the record notes that the claimant was doing well with her medication regimen and appeared with an appropriate mood and behavior, with no evidence of psychosis. ([Tr. 465-501, 502-19, 520-25, 566-70, 571-88, 599-625]).  In fact, it appears that only when the claimant had briefly stopped taking her medication around June of 2022, did she again experience symptoms of psychosis, as she was reportedly hearing voices and experiencing frequent panic attacks, ([Tr. 526-550, 571-88]).  Nonetheless, the claimant resumed taking her medication and examination findings thereafter demonstrate that the claimant's medication was working, and she was feeling well enough to visit a sick family member who was in the hospital. ([Tr. 589-98, 599-625]).  Based on the aforementioned, the undersigned finds the limitations within the residual functional capacity are adequate.

(Tr. 24-25).

Next, the ALJ considered medical opinions and prior administrative medical findings in the record (Tr. 25-26).  The ALJ announced that she found persuasive the mental assessments of the State agency psychological consultants (Tr. 25) (citing Tr. 64-70, 71-78).  The ALJ explained:

> These opinions are consistent with and supported by the evidence of record, insomuch as it demonstrates that the claimant is no more than moderately limited by her psychological impairments, as evidenced by the various examination findings, which showed no findings relating to psychosis and the recurring notations of how well her symptoms were controlled with prescribed medication. ([Tr. 465-501, 502-19, 520-25, 566-70, 571-88, 599-626).

(Id.).  When the ALJ's decision is considered holistically, the above findings are supported by substantial evidence in the record and comport with the regulations which require the ALJ to explain how she considered the supportability and consistency factors in determining the persuasiveness of the prior administrative medical findings.  20 C.F.R. § 404.1520c(b)(2).

The ALJ announced that she found the opinion of Dr. Lynch, somewhat persuasive (Tr. 26) (citing Tr. 407-13).  The ALJ provided the following explanation:

> This opinion is consistent with and supported by the evidence insomuch that it demonstrates that the claimant experiences psychological symptoms that would cause more than a minimal impact on her ability to perform work activities on a sustained basis. However, this opinion notes moderate to marked limitations in the claimant's ability to tolerate stress and pressure of day-to-day employment and in her capacity to respond appropriately to supervision, coworkers and work pressures, which is contrary to the evidence, as it demonstrates that the claimant was doing well with her medication regimen and often appeared with an appropriate mood and behavior, with no evidence of psychosis. ([Tr. 465-501, 502-19, 520-25, 566-70, 571-88, 599-625]).

(Id.). The ALJ explained how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Lynch's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ found that the moderate to marked limitations expressed by Dr. Lynch are not supported by the medical evidence of record. After having reviewed the record and the ALJ's decision holistically, the Court concludes that the ALJ's persuasiveness finding comports with applicable law and is supported by substantial evidence in the record.

The ALJ then indicated that she found unpersuasive the opinions expressed by Plaintiff's primary care provider[8] nurse practitioner Robin Atwood and her treating therapist Ashley Blevins (Id.) (citing Tr. 551-62, 563-65). The ALJ explained that their opinions "are not consistent with or supported by the evidence of record, as it demonstrated a good response to prescribed medication, with various examination findings noting no evidence of psychosis" (Id.) (citing Tr. 465-501, 502-19, 520-25, 566-70, 571-88, 599-625). When the ALJ's decision is read holistically her findings are supported by substantial evidence in the record. Additionally, the ALJ's decision comports with the regulations which require the ALJ to explain how she considered the

---

8 The ALJ's decision refers to nurse practitioner Robin Atwood as "the claimant's primary care physician" (Tr. 26). As this is a typographical error, the undersigned has referred to Ms. Atwood is a primary care provider.

11

supportability and consistency factors in determining the persuasiveness of the prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2).

As is common in these cases, the administration received additional evidence after the State agency medical consultants reviewed the record and rendered their opinions. *See* Kelly v. Comm'r of Soc. Sec., 314 F. App'x 827, 831 (6th Cir. 2009). The ALJ specifically found that the opinions are consistent with all the evidence in the record—including the subsequently received medical Exhibits—that are discussed in detail, with pinpoint citations, in the preceding paragraphs of the decision. The ALJ did not inappropriately play doctor but instead weighed the evidence and gave Plaintiff the benefit of the doubt by deciding to impose slightly greater limits (for example, limiting Plaintiff to understand and remember only simple instructions; limiting Plaintiff to occasional interactions with supervisors and/or coworkers; and indicating Plaintiff cannot perform work requiring a specific production rate or work that requires hourly quotas). The Court notes that Plaintiff has not made a clear showing that the subsequently received evidence fatally undermines the accuracy of the prior administrative medical findings. Id. Moreover, the ALJ's additional limitations ultimately benefited Plaintiff and cannot constitute error.

Review of the ALJ's decision reveals that she considered all the medical exhibits and provided a comprehensive discussion of those records. In some instances, the ALJ discussed the objective observations of the treating source, rather than Plaintiff's subjective statements to that treating source. Although the ALJ is required to develop the record fully and fairly, which she has done in this case, the ALJ is not required to discuss all the evidence submitted, and her failure to cite the specific evidence identified by Plaintiff does not mean that the evidence was not considered. *See* Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004)).

The ALJ's mental RFC determination is supported by substantial evidence in the record and comports with applicable law. Consequently, Plaintiff is not entitled to relief on her challenge to Finding No. 5.

### D. Plaintiff's Additional Challenges

Plaintiff indicates that Finding No. 10 is not supported by substantial evidence because the ALJ's rejection of the disabling medical opinions from the treating therapist (Ms. Blevins), the treating primary care provider (Ms. Atwood), and the psychological consultative evaluator (Dr. Lynch) is in violation of 20 C.F.R. § 404.1520c as the ALJ did not appropriately evaluate the consistency and supportability of the medical opinions (DN 11-2 PageID # 665). As explained above, the ALJ's findings regarding these medical opinions are supported by substantial evidence and comport with 20 C.F.R. § 404.1520c. For this reason, the ALJ's mental RFC finding is supported by substantial evidence and comports with applicable law. Therefore, Finding No. 10 is also supported by substantial evidence and Plaintiff is not entitled to relief on these claims.

### Conclusion

As the undersigned noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, the undersigned is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the undersigned concludes that the ALJ's determination is supported by substantial evidence in the record and

13

correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenges to Finding Nos. 5 and 10.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law. As such, the undersigned **RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner, and judgment be **GRANTED** for the Commissioner.

May 8, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed, or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140 (1985).

May 8, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:     Counsel