UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:23-CV-90-CRS

RACHEL G.                                                                                   PLAINTIFF

v.

MARTIN O'MALLEY,
*Commissioner of the Social Security Administration*[1]                DEFENDANT

## MEMORANDUM OPINION & ORDER

The Commissioner of Social Security denied Rachel G.'s ("Claimant's") claims for disability insurance benefits under Title II of the Social Security Act. Claimant seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). The court referred this matter to a U.S. magistrate judge for preparation of a report and recommendation. The magistrate judge recommends that the Commissioner's decision be affirmed. Report, DN 13. Claimant objects to that recommendation. Objections, DN 16. The court will now consider Claimant's Objections.

## I. Background

In August 2021, Claimant suffered an acute mental breakdown that prevented her from sleeping for nearly a week and resulted in psychosis, which manifested auditory and visual hallucinations.[2] She was involuntarily committed to a psychiatric facility for treatment, and, upon her release, her primary-care provider restricted her from working due to lingering anxiety, depression, and panic attacks. The next month, Claimant protectively filed her DIB application, claiming disability because of "mental problems," memory issues, anxiety, bipolar disorder, depression, schizophrenia, panic attacks, and high blood pressure. Her claim was denied initially

---

[1] Martin O'Malley is now the Commissioner of the Social Security Administration. So pursuant to FED. R. CIV. P. 25(d), he is substituted for former Acting Commissioner Kilolo Kijakazi.

[2] Claimant heard voices, spoke with dead people, saw people in her mirror who were not there, felt as if her body was "being filled up with liquid," Administrative Record, DN 6 at PageID# 396, and "rubber bands," *id.* at PageID# 347, and thought someone "removed her heart and replaced it with a mechanical one that [was] programmed to wind down soon." *Id.*

and on reconsideration. After a telephonic hearing, an administrative law judge ("ALJ") issued a written decision concluding that Claimant was not disabled within the meaning of the Social Security Act. Claimant's request for administrative review was denied by the Appeals Council. As a result, the ALJ's decision became final and subject to judicial review. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

## II. Standard of Review

The court reviews *de novo* the portions of a magistrate judge's report to which a claimant timely and specifically objects in writing. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). To be specific, objections must "pinpoint those portions of the" magistrate judge's "report that the district court must specifically consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "A general objection to the entirety of the magistrate [judge's] report has the same effect as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). After considering all specific objections, the court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

In reviewing findings by an ALJ, the court must determine whether those findings are supported by substantial evidence and made pursuant to proper legal standards and nothing more. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(h). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation marks omitted). An administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

### III. Discussion

Before the magistrate judge, Claimant took issue with the ALJ's mental residual functional capacity ("RFC") determination for two reasons. Claimant's Fact & Law Summary, DN 11-1. First, Claimant argued the ALJ didn't properly evaluate the persuasiveness of certain medical opinions pursuant to 20 C.F.R. § 404.1520c. *Id.* at PageID# 659–662. More particularly, she contended that the ALJ's persuasiveness-evaluation, which deemed certain medical opinions to be unpersuasive in light of Claimant's "good response" to medication, did not account for the context of said "good response." Second, consequently, Claimant submitted that the ALJ's mental-RFC-determination is unsupported by substantial evidence. *Id.*

In the end, the magistrate judge found that the ALJ complied with § 404.1520c and that her mental-RFC-determination was supported by substantial evidence, and so recommended her decision be affirmed. Report, DN 13 at PageID# 705. Claimant objects to the magistrate judge's Report. She submits the magistrate judge erred by (1) accepting the ALJ's premise that Claimant's "good response" to medication necessarily undercut the persuasiveness of the at-issue medical opinions and (2) concluding the ALJ's decision is supported by substantial evidence. Objections, DN 16 at PageID# 716–20.

Claimant's Objections boil down to one question: Did the ALJ consider the evidence of record in the proper context? If yes, the ALJ's persuasiveness-evaluation could be adequate, and her mental-RFC-determination could be supported by substantial evidence. If no, then the records relied on by the ALJ may not support her decision, thus undermining both the adequacy of her persuasiveness-evaluation and the evidentiary sufficiency of her mental-RFC-determination.

The question is an important one because § 404.1520c requires an ALJ to evaluate the persuasiveness of medical opinions with five criteria in mind: supportability, consistency,

relationship between the provider and the claimant, the specialization of the provider, and other factors. 20 C.F.R. § 404.1520c(c). The ALJ must "articulate" how "persuasive" she finds "all of the medical opinions and all of the prior administrative findings in [the] case record." *Id.* at § 404.1520c(b). Specifically, § 404.1520c(b)(2) requires the ALJ to "explain" how he or she "considered the supportability and consistency" of each source's medical opinion. That's because supportability and consistency are the two "most important factors" to consider. *Id.* at § 404.15020c(b)(2). The consistency inquiry asks whether the medical opinion "is consistent with the evidence from the other medical sources and nonmedical sources in the claim[.]" *Id.* at § 404.1520c(c)(2). The supportability inquiry is concerned with the relevance of the medical evidence informing an opinion: the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* at § 404.1520c(c)(1).

To properly evaluate the consistency and supportability of a medical opinion, and thus its persuasiveness, the ALJ must take the record evidence in the proper context. To be sure, a persuasiveness-evaluation is inadequate when it takes records "out of context" and makes findings that are "offset by other examples in the record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). Instead, the medical provider's "statements must be read in context of the overall diagnostic picture he draws." *Martin v. Kijakazi*, 2021 WL 5015807, at *7 (M.D. Tenn. Oct. 28, 2021) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Here, Claimant suffered from five medically-determinable severe mental impairments: major depressive disorder, anxiety disorder/generalized anxiety disorder, social phobia, and disruptive mood dysregulation disorder. ALJ Op., DN 6 at PageID# 34. Additionally, Claimant previously suffered from a "brief psychotic disorder"—one which manifested "visual" and

"auditory hallucinations." Admin. Rec., DN 6 at PageID# 399. Claimant's severe impairments developed after her acute mental breakdown, and none triggered psychosis.

Yet, when the ALJ deemed as unpersuasive the medical opinions of Dr. Greg Lynch, M.D., Robin Atwood, APRN, and Ashely Blevins, CSW, she indicated that their opined limitations were unsupported by the record evidence because Claimant (1) had a "good response" to medication, (2) often appeared "with an appropriate mood and behavior," and (3) did not present at appointments with "evidence of psychosis":

> The undersigned finds the opinion of [consultative examiner] Dr. Lynch, somewhat persuasive. (Ex. 5F). This opinion is consistent with and supported by the evidence insomuch that it demonstrates that the claimant experiences psychological symptoms that would cause more than a minimal impact on her ability to perform work activities on a sustained basis. However, this opinion notes moderate to marked limitations in the claimant's ability to tolerate stress and pressure of day-to-day employment and in her capacity to respond appropriately to supervision, coworkers and work pressures, which is *contrary to the evidence, as it demonstrates that the claimant was doing well with her medication regimen and often appeared with an appropriate mood and behavior, with no evidence of psychosis*. (Ex. 7F, 8F, 9F, 13F, 14F, 16F).
>
> The undersigned finds the opinions of the claimant's primary care [provider, Atwood,] and that of her therapist, [Blevins,] unpersuasive. (Ex. 11F, 12F). These opinions are not consistent with or supported by the evidence of record, *as it demonstrated a good response to prescribed medication, with various examination findings noting no evidence of psychosis.* (Ex. 7F, 8F, 9F, 13F, 14F, 16F).

ALJ Op., DN 6 at PageID# 38–39 (emphasis added). Regrettably, in reaching these conclusions, the ALJ took the record evidence out of context in three ways.

First, the ALJ did not articulate what was meant by Claimant's "good response" to medication. Instead, she simply relied on the phrase to deem as unpersuasive any medical opinion asserting that Claimant's mental impairments more than minimally limit her ability to work.

Page **5** of **8**

Unfortunately, this interpretation takes Claimant's "good response" to medication out of context. A sampling of the records relied on by the ALJ show that Claimant continued to suffer from severe, medically-determinable mental impairments despite her "good response" to medication:

- ➢ Despite "taking all medications as prescribed by her primary care" provider, Claimant's treating therapist, Blevins, noted that Claimant "still continues to have panic attacks." Admin. Rec., DN 6 at PageID# 464.
- ➢ While Claimant responded "well" to medication, Atwood, her primary-care provider, nonetheless noted objective findings for "anxiety." *Id.* at PageID# 478, 480.
- ➢ Despite Claimant's prescription for "Xanax[,] which helps with anxiety and panic attacks," Patricia Cunningham, APRN, a treating provider, noted that Claimant's "[p]anic attacks happen[] frequently, often several times/day." *Id.* at PageID# 585.
- ➢ In August 2022, despite Claimant's medication regimen, Cunningham reported that Claimant continued to suffer from "ongoing depression, anxiety, [and] frequent crying spells." *Id.*
- ➢ In September 2022, Cunningham assessed that Claimant continued to suffer from "ongoing depression due to health issues and inability to work" as well as "moderate to high" "anxiety . . . , especially when she goes out in public." *Id.* at PageID# 623.
- ➢ In October 2022, Blevins advised that Claimant should speak with a psychiatrist "to determine if there needs to be a medication change" considering Claimant's inability to sleep. *Id.* at PageID# 612.

Moreover, these records contradict the ALJ's statement that Claimant only experienced frequent panic attacks when "she briefly stopped taking her medication around June of 2022." ALJ Op., DN 6 at PageID# 38. To the contrary, panic attacks were an ordinary occurrence for which Claimant was prescribed medication to take as needed (up to three times per day) to blunt

their effects—not to prevent panic attacks from occurring in the first instance. Admin. Rec., DN 6 at PageID# 404, 464, 479, 481, 484, 490, 492, 496, 519, 520, 567, 570, 573, 593.

Taken together, these records suggest that Claimant's medication regimen tempered her hallucinations and other symptoms of psychosis and helped—but did not eliminate—the symptoms of her medically-determinable severe impairments. Undoubtedly, such is a "good response" to medication. But the ALJ didn't account for this nuance and, thus, failed to articulate how or why Dr. Lynch's, Atwood's, and Blevins' opinions are inconsistent or unsupported by the record because of Claimant's "good response" to medication, properly considered.

Second, the ALJ seemingly did not consider—and certainly did not articulate—why Claimant's appropriate appearance and demeanor at medical appointments is sufficient to undermine Dr. Lynch's, Atwood's, and Blevins' medical opinions. "The fact that a" claimant suffering from anxiety and depression "can pull herself together and present herself appropriately for a doctor's appointment does not substantiate a conclusion that she can consistently motivate herself to get out of bed and go to work on a regular basis." *Martin*, 2021 WL 5015807, at *7. The same is true here.[3] At a minimum, further articulation was necessary to explain the ALJ's decision.

And third, the ALJ's conclusion that Dr. Lynch's, Atwood's, and Blevins' medical opinions are unpersuasive because Claimant no longer suffers from symptoms of psychosis is misplaced. None of these opinions concern psychosis; rather, they concern anxiety and depression, and the alleged limiting effects of same. Dr. Lynch Op., DN 6 at PageID# 420–24; Atwood Op., *id.* at PageID# 564–66; Blevins Op., *id.* at PageID# 576–78. What's more, to the extent those

---

[3] The Commissioner attempts to distinguish Claimant's case from *Martin* by noting that "nothing made a difference" for the *Martin*-claimant's mental health conditions, whereas here Claimant enjoyed some improvement. Resp., DN 18 at PageID# 730. However, that factual difference does not change the applicable principle: context matters, and one cannot deduce from a claimant's appearance at a medical appointment alone whether her mental impairments inhibit her from performing meaningful work in the national economy.

medical sources declined to opine that Claimant is functionally limited because she experiences symptoms of psychosis, or that such past symptoms of psychosis presently impact her ability to work, these opinions are consistent with the record evidence.

Ultimately, the ALJ consistently made one mistake: she took medical records out of context. This error tainted the ALJ's persuasiveness-evaluation of Dr. Lynch's, Atwood's, and Blevins' medical opinions because it prevented a "logical bridge" from being built between her conclusions and the evidence she relied on. *Young v. Saul*, 2020 WL 4820714, at *2 (W.D. Ky. Aug. 18, 2020). Consequently, the ALJ's persuasiveness-evaluation does not comport with § 404.1520c's demands and is thus inadequate. *Nicole R. v. Comm'r of Soc. Sec.*, 2022 WL 3040084, at *4 (S.D. Ohio Aug. 2, 2022) (ALJ didn't comply with § 404.1520c where he failed to "consider" an "opinion in the context of other evidence in the record, as is required to evaluate its consistency"); *Anne B. v. Comm'r of Soc. Sec.*, 2024 WL 469057, at *5–6 (S.D. Ohio Feb. 6, 2024) (same as to supportability and consistency). The error is harmful and warrants remand because reevaluation of the persuasiveness of those opinions may impact the remainder of the ALJ's analysis, including the RFC-determination. *Id.* at *6.

## IV. Conclusion

After careful consideration, the court **SUSTAINS** Claimant's Objections, DN 16, **REJECTS** the magistrate judge's Report, DN 13, and **GRANTS** Claimant's "Motion" for a summary judgment, DN 11.[4] This action is **REMANDED** to the Commissioner for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). A separate judgment will be entered contemporaneously.

**IT IS SO ORDERED.**

August 13, 2024

Charles R. Simpson III, Senior Judge
United States District Court

---

[4] Claimant improperly filed her Brief as a "Motion for Summary Judgment." *See* Order, DN 8 at ¶2 ("Plaintiff must set forth his/her position by an appropriate *brief*," not by motion) (emphasis added).